UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BOMMARITO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-204** |
| **BELLE CHASSE MARINE TRANSPORTATION, ET AL.** | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court are Defendants' Motion for Partial Summary Judgment on Seaman Status, R. Doc. 69, and Defendants' Motion for Partial Summary Judgment on Vessel Negligence, R. Doc. 77. Plaintiffs filed oppositions to both motions, R. Docs. 75 and 83, to which Defendants filed replies, R. Docs. 82 and 97. Having considered the briefing and the applicable law, the Court now rules as follows.

I.  BACKGROUND

Plaintiff Bosit Bommarito, III initially brought this Jones Act suit claiming injuries suffered in the course of his employment. Mr. Bommarito filed his Complaint and requested a jury trial on February 1, 2021. R. Doc. 1. Mr. Bommarito averred that he was a Jones Act seaman assigned to work as a crewmember aboard a crane barge known as OC160. *Id.* at 4. Mr. Bommarito alleged that he was injured while assisting in the movement of various gangway segments. *Id.* Mr. Bommarito claimed that, although he voiced concerns about the weight of the gangway segments, his supervisor refused to use a backhoe and instructed the crewmembers to move the segments themselves. *Id.* Mr. Bommarito claimed that the crane operator then recklessly lifted the segments without first performing a "rigging weight calculation." *Id.* at 4-5. Mr. Bommarito averred that without the backhoe's support, the equipment was insufficient to lift

1

the gangway segment, causing one of the fabricated hooks to break. *Id.* Mr. Bommarito claimed that one of the "plate hooks broke loose and went flying and hit [him] in the head, knocking [him] onto the river batture." *Id.* at 5.

Mr. Bommarito alleged that he sustained serious injuries, including disabling and permanent injuries to his head, skull, eye, neck, shoulders, and spine. *Id.* Mr. Bommarito claimed that his eye was sunken into his skull and that he was experiencing neurological deficits and concussion syndrome. *Id.* Further, Mr. Bommarito claimed that he had a temporary total disability and a permanent partial disability. *Id.* Mr. Bommarito sought damages for lost earnings and earning capacity, physical and mental pain and suffering, past and future physical disability, and past and future medical and related expenses. *Id.* at 7. Mr. Bommarito also sought maintenance and cure, attorney's fees, and punitive damages. *Id.* at 8.

On March 15, 2021, Mr. Bommarito died at the age of forty-eight. R. Doc. 17-1 at 3. Susan Bommarito, Mr. Bommarito's mother, and Sheila Mae Callais, the legal tutor of Mr. Bommarito's minor children[1], moved for substitution to pursue Mr. Bommarito's claims. R. Doc. 17. The Court granted the motion, substituting Susan Bommarito and Sheila Mae Callais as Plaintiffs, on May 3, 2021. R. Doc. 18. The Court later granted a request by plaintiff Bosit Bommarito, IV, one of Mr. Bommarito's two children, to be substituted as a party on his own behalf, having reached the age of majority. R. Doc. 74.

Plaintiffs filed a First Amended Complaint on May 13, 2021. R. Doc. 19. Plaintiffs allege that the previously-named Defendants have a common owner, Gordon Konrad. *Id.* at 2. Plaintiffs also add Talisman Insurance Company LLC as a Defendant. *Id.* at 1. Additionally, Plaintiffs now bring a wrongful death and survival action. *Id.* at 2. Plaintiffs allege that in December 2020, Mr.

---

[1] The mother of Mr. Bommarito's two children is also deceased.

Bommarito had to undergo an emergency surgery due to his injuries. *Id.* Plaintiffs allege that Mr. Bommarito struggled to obtain post-operative pain management, which he sought from Defendants and which Defendants owed him, and accidentally overdosed on pain medication as a result. *Id.* In the survival action, Plaintiffs allege that Defendants are liable to Mr. Bommarito's children for Mr. Bommarito's pain and suffering between the initial incident and his death. *Id.* at 3. Plaintiffs further allege that Defendants are liable for the trauma that Susan Bommarito suffered while trying to resuscitate Mr. Bommarito after his overdose. *Id.*

Plaintiffs filed a Second Amended Complaint on May 17, 2021. R. Doc. 22. Plaintiffs now seek bystander damages for Susan Bommarito. *Id.* at 4. Plaintiffs also seek damages for loss of support for Mr. Bommarito's children. *Id.* at 5. Plaintiffs further seek punitive damages and attorney's fees, arguing that "Defendants' wrongful actions in failing to provide pain management therapy to Mr. Bommarito were grossly negligent, reckless, willful, and wrongful in derogation of Mr. Bommarito's right to maintenance and cure." *Id.* Plaintiffs now seek $6,010,000 in itemized damages, including $1,000,000 for Mr. Bommarito's personal injuries, $500,000 for aggravation of these injuries (including survivorship damages), $1,000,000 in punitive damages, $500,000 for Susan Bommarito's mental anguish, $1,500,000 for each of Mr. Bommarito's children for their father's wrongful death, and $10,000 for funeral expenses. *Id.* at 6-7. Plaintiffs further seek maintenance and cure and attorney's fees and costs. *Id.* at 7.

Defendants have filed Answers to Mr. Bommarito's original complaint and to both of Plaintiffs' Amended Complaints. R. Docs. 35, 36, 38. Defendants generally deny the allegations in Mr. Bommarito's original complaint and assert affirmative defenses, including that Mr. Bommarito failed to state a claim on which relief can be granted; that any injury Mr. Bommarito sustained was caused by his own negligence or the acts of third parties; that Defendants are

3

entitled to limitation of liability; and that Mr. Bommarito's only remedy is worker's compensation. R. Doc. 35. Defendants also generally deny the allegations in Plaintiffs' Amended Complaints and assert defenses including that Mr. Bommarito's own fault is a complete bar to Plaintiffs' claims; that Defendants are not liable for Plaintiffs' survival and wrongful death claims under La. R.S. § 9:2800.10, which provides immunity from liability for injuries sustained while committing a felony[2]; and similar defenses to Defendants' first Answer. R. Docs. 36, 38. On September 10, 2021, Plaintiffs filed another Amended Complaint asserting an alternative claim under 33 U.S.C. § 905(b) for the negligence of third parties, given that Defendants dispute Plaintiff's status as a seaman. R. Doc. 47.

## II.     PRESENT MOTIONS

### a. *Defendants' Motion for Partial Summary Judgment on Seaman Status Under the Jones Act*

Defendants seek summary judgment on the issue of Mr. Bommarito's status as a Jones Act seaman, arguing that Plaintiffs cannot prove the requirements for seaman status and that Plaintiffs' claims for Jones Act negligence, unseaworthiness, and maintenance and cure must fail. R. Doc. 69. Plaintiffs oppose the motion, arguing that genuine disputes remain as to whether Mr. Bommarito met the requirements for seaman status based on which entity employed him, the extent of his work that took place on the water, and the nature of his work. R. Doc. 75.

### b. *Defendants' Motion for Partial Summary Judgment on Vessel Negligence Under §905(b)*

---

[2] Defendants allege that Mr. Bommarito overdosed on substances including fentanyl and xylazine, which are restricted substances for which Mr. Bommarito did not have a prescription.

Defendants seek summary judgment on Plaintiffs' alternative claim for vessel negligence under 33 U.S.C. § 905(b), arguing that Belle Chasse Marine, the owner of the vessel, did not breach any of its duties as vessel owner and that the other relevant defendant, Belle Chasse Land, was not acting as owner of the vessel when Mr. Bommarito was injured; thus, Defendants argue, neither defendant can be held liable. R. Doc. 77. Plaintiffs oppose the motion, arguing that Belle Chasse Marine breached its duties as vessel owner and, alternatively, that Belle Chasse Land may also be liable for vessel negligence as an operator of the vessel. R. Doc. 83.

### III.   APPLICABLE LAW

#### a. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a

motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence" are not sufficient to show a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

b. ***Seaman Status Under the Jones Act***

The Jones Act provides that "[a] seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. In addition to damages for negligence under the Jones Act, seamen may also recover "maintenance and cure" and damages for unseaworthiness. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995). These Jones Act remedies are available only to seamen, to protect them from the unique risks posed by "their exposure to 'the perils of the sea.'" *Id.* The Jones Act itself does not define the term "seaman," and courts once struggled to establish a definition. *Id.* at 355-56. However, the United States Supreme Court has established two main criteria that an employee claiming seaman status must prove: (1) the employee's duties "contribut[e] to the function of [a] vessel or to the accomplishment of its mission," and (2) the employee has "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)).

A seaman's connection to a vessel is substantial in duration if he spends thirty percent or more of his working time in service of the vessel in navigation. *Id.* at 371. "A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are." *Id.*

As for the nature of a seaman's connection to a vessel, whether it is substantial depends on "whether the employee's duties take him to sea," which "distinguish[es] land-based from sea-based employees." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555 (1997). This has generally been interpreted as a means of determining whether a plaintiff's work exposes him to "the perils of the sea." But while being subject to the perils of the sea may be one of the considerations in the calculus of the nature test, it is not the sole or even the primary consideration. *See Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d 564, 574 (5th Cir. 2021) ("[s]imply asking whether the worker was subject to the 'perils of the sea' is not enough to resolve the nature element"). The Fifth Circuit in *Sanchez* noted that "In *Chandris*, the [United States Supreme] Court made clear that seamen and non-seamen maritime workers may face similar risks and perils, and that this is not an adequate test for distinguishing between the two." *Id.* Therefore, the Fifth Circuit concluded that the following additional inquiries should be made:

> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?
> (2) Is the work sea-based or [does it] involve seagoing activity?
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?

*Id.* The Fifth Circuit also noted that generally, "'maintenance work while the [vessel] was docked' [does] not satisfy the nature test." *Id.* at 575 (quoting *Papai*, 520 U.S. at 559).

### c. *Vessel Negligence Under §905(b)*

Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA") provides that workers such as longshoremen or stevedores (who lack the requirements of seamen status), if injured "by the negligence of a vessel," may bring an action against the vessel, "and the employer shall not be liable to the vessel for such damages directly or indirectly." 33 U.S.C. §905(b). Such plaintiffs under the LHWCA may also bring negligence claims against the vessel owner. *Aguilar v. Bollinger Shipyards, Inc.*, 833 F. Supp. 2d 582, 591 (E.D. La. 2011) (Berrigan, J.). Vessel owners owe three general duties to longshoremen:

> The first, which courts have come to call the "turnover duty," relates to the condition of the ship upon the commencement of stevedoring operations. The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel." The third duty, called the "duty to intervene," concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore.

*Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994) (internal citations omitted).

The first duty, the "turnover duty," contains two parts: (1) "a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety," and (2) "a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it"—unless such dangers are "open and obvious" or "dangers a reasonably competent stevedore should anticipate." *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 392 (5th Cir. 2008). The second duty, the "active control" duty, is a duty to prevent injury due to "hazards under the control of the ship," and its scope depends on whether the vessel owner had "operational control" of the area in question and the stevedore's work "at the time of the activities in question." *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir.

1996); *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x 397, 403 (5th Cir. 2007). The third duty, the "duty to intervene," "imposes liability 'if the vessel owner fails to intervene in the stevedore's operations when [the vessel owner] has actual knowledge both of the hazards and that the stevedore, in the exercise of 'obviously improvident' judgment means to work [despite the hazards] and therefore cannot be relied on to remedy [them]." *Manson Gulf, L.L.C v. Mod. Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017) (quoting *Burchett v. Cargill, Inc.*, 48 F.3d 173, 178 (5th Cir. 1995)).

When an entity is both the vessel owner and the employer of longshoreman, it remains subject to the three duties of vessel owners and may be liable for negligence in its capacity as the vessel owner. *Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 532 (5th Cir. 1991). However, in these cases in which the longshoreman's employer has a "dual capacity" as the vessel owner, the employer "retains its immunity for acts taken in its capacity as an employer"—it is *only* liable in its capacity as the vessel owner. *Id.* Therefore, courts must "separate the negligence of the shipowner and that of the stevedore, even when the shipowner performs its own stevedoring activities." *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1033 (5th Cir. 1985). The vessel owner's duty is "to provide the stevedore a safe ship and to correct any unreasonably dangerous situation that arises during cargo operations, if the owner is aware of the danger and knows that the stevedore has failed adequately to protect against the danger." *Id.* Thus, the plaintiff must show that the employer breached this specific duty to hold the employer liable in its capacity as a vessel owner. *Id.*

IV. **DISCUSSION**

   a. *Seaman Status Under the Jones Act*

Plaintiffs' claims for Jones Act negligence, maintenance and cure, and unseaworthiness must fail because Mr. Bommarito does not qualify as a Jones Act seaman. R. Doc. 69. Mr. Bommarito's work as a welder's helper was mostly land-based and his role on the OC160, the crane barge on which he was working when he was injured, did not constitute traditional crew member duties. R. Doc. 69-1 at 4-5, 7. Further, Mr. Bommarito spent only a fraction of his working time on the vessel in navigation and most of his work took place on land or when the vessel was moored. *Id.* at 17-18.

Therefore, the Court finds that Plaintiffs cannot meet their burden to show that Mr. Bommarito was a Jones Act seaman. Plaintiffs must prove (1) that Mr. Bommarito's duties "contribut[ed] to the function of the vessel or to the accomplishment of its mission," and (2) that he had "a connection to a vessel in navigation . . . that [was] substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 368. Plaintiffs have likely satisfied the broader first prong by showing that Mr. Bommarito somehow contributed to the function of the OC160. However, Plaintiffs have not satisfied the second prong, which has two parts.

First, to show that Mr. Bommarito's connection to the vessel was substantial in duration, Plaintiffs must show that he spent thirty percent or more of his working time in service of the vessel in navigation. *Id.* at 371. The parties dispute how much of Mr. Bommarito's time was spent in service of the OC160 while it was on the water. Defendants argue, with supporting evidence, that the vessel was moored to the dock the vast majority of the time that Mr. Bommarito worked on it, while Plaintiffs assert that Mr. Bommarito was occasionally on the vessel while it was in navigation. Thus, whether the first part of this prong is satisfied is doubtful

and may depend on further fact development. However, Plaintiffs cannot satisfy the second part of this prong, which requires Plaintiffs to show that Mr. Bommarito's connection to the vessel was substantial in nature by showing that he was a sea-based, rather than land-based, employee. *Papai*, 520 U.S. at 555. In the Fifth Circuit, this analysis considers three questions: whether the employee "owe[d] his allegiance to the vessel, rather than simply to a shoreside employer"; whether the work was "sea-based" or "involve[d] seagoing activity"; and whether the work on the vessel was "limited to performance of a discrete task after which the worker's connection to the vessel end[ed]" or "include[d] sailing with the vessel from port to port or location to location." *Sanchez*, 997 F.3d at 574.

The first question is uncertain due to the ambiguities Plaintiffs have noted regarding which entity employed Mr. Bommarito. However, as to the second question, Defendants have provided solid evidence that Mr. Bommarito worked mostly on land and that when his work took him onto the vessel, the vessel was secured to the dock, so that Mr. Bommarito simply stepped aboard from the dock. This makes it doubtful that Mr. Bommarito's work was sea-based. The third question also weighs against Plaintiffs. Mr. Bommarito's work was largely limited to discrete tasks after which his connection to the vessel ended—namely, serving as a welder's helper during construction work—and overwhelmingly did not include sailing with the vessel from location to location (Mr. Bommarito usually drove a car to the vessel when it moved locations). However, the clearest indication that Mr. Bommarito does not meet the "nature" requirement comes from the Fifth Circuit's recent observation in *Sanchez* that maintenance work while a vessel is docked does not satisfy the "nature" requirement. 997 F.3d at 575. Based on the evidence about Mr. Bommarito's work and the fact that the OC160 was almost always moored while he worked on it, this description characterizes the bulk of Mr. Bommarito's work on the

OC160, precluding Plaintiffs from satisfying the "nature" requirement. Thus, Plaintiffs have failed to show that Mr. Bommarito qualifies as a seaman under the Jones Act, and Plaintiffs' claims for Jones Act negligence, maintenance and cure, and unseaworthiness must fail.

### b. *Vessel Negligence Under §905(b)*

Defendants argue that Plaintiffs' alternative claim for vessel negligence must fail because Plaintiffs cannot prove that Belle Chasse Marine, the purported vessel owner, was negligent. R. Doc. 77. Defendants assert that there is no evidence that any part of the OC160 was defective or that Belle Chasse Marine had control over Mr. Bommarito's work when the accident happened, and that the hooks that caused Mr. Bommarito's injuries were provided by Belle Chasse Land, a separate entity. R. Doc. 77-1 at 9. Defendants also assert that any claim against Belle Chasse Land fails because it was acting in its capacity as a construction company, not as a vessel owner. *Id.* at 15-16. On the other hand, Plaintiffs argue that the distinction between Belle Chasse Marine and Belle Chasse Land is unclear because the two entities' management and finances are blended, and that there is evidence that the vessel owner (whichever entity that was) breached its duties by failing to keep Mr. Bommarito safe on the OC160. R. Doc. 83 at 1, 15.

The Court finds that genuine disputes of fact remain as to Plaintiffs' vessel negligence claim. Plaintiffs must prove that the vessel owner breached one of the three duties it owed to longshoremen. The first is the "turnover duty," which includes "a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in [reasonably safe] condition" and "a duty to warn the stevedore of latent or hidden dangers" about which the vessel owner knows or should know, unless such dangers are "open and obvious" or "a reasonably competent stevedore should anticipate [them]". *Kirksey*, 535 F.3d at 392. The second is the "active control" duty, which requires the vessel owner to prevent injury due to "hazards under the control of the

12

ship" and depends on whether the vessel owner had "operational control" of the area in question and the stevedore or harbor worker's work when the accident occurred. *Singleton*, 79 F.3d at 28; *Fontenot*, 227 F. App'x at 403. The third is the "duty to intervene," which requires the vessel owner to "intervene in the stevedore's operations when [the vessel owner] has actual knowledge both of the hazards and that the stevedore, in the exercise of 'obviously improvident' judgment means to work [despite the hazards] and therefore cannot be relied on to remedy [them]." *Manson Gulf*, 878 F.3d at 134.

Any determination of whether the vessel owner breached one of these duties depends on further development of the facts. Plaintiffs and Defendants provide differing views of the nature of Mr. Bommarito's work, which specific piece of equipment caused his injuries, and even which entity was the vessel owner and which was Mr. Bommarito's employer. Given these disputes, it would be premature for the Court to decide such issues as whether the vessel owner turned over the ship in reasonably safe condition, which areas and work activities were under the vessel owner's operational control, which hazards were within the vessel owner's knowledge, and whether Mr. Bommarito was exercising "obviously improvident" judgment. Moreover, given the confusion Plaintiffs have noted about the extent to which Belle Chasse Marine and Belle Chasse Land are separate entities and which one employed Mr. Bommarito, it would also be premature to determine whether this case involves a "dual capacity" vessel owner and employer and whether that entity may be held liable purely in its capacity as a vessel owner. *Levene*, 943 F.2d at 532. Therefore, summary judgment on Plaintiffs' vessel negligence claim is inappropriate.

V. **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment on Seaman Status, R. Doc. 69, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Vessel Negligence, R. Doc. 77, is **DENIED**.

New Orleans, Louisiana, this 17th day of March, 2022.

                                                                    UNITED STATES DISTRICT JUDGE